Argued and submitted November 29, 1989, affirmed April 25, 1990

# STATE OF OREGON,
*Respondent,*

*v.*

# KENNETH MARK EVANS,
*Appellant.*

## (C87-11-36178; CA A50957)

790 P2d 1177

Lawrence J. Hall, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Acting Public Defender, Salem.

Diane S. Lefkow, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

## BUTTLER, P. J.

Defendant appeals his convictions for being an ex-convict in possession of a concealed weapon, ORS 166.270(1), and an ex-convict in possession of a restricted weapon. ORS 166.270(2). He assigns error to the trial court's denial of his motion to suppress a .22 caliber rifle and two semiautomatic pistols.

The trial court's findings are supported by the evidence. On May 4, at approximately 9 p.m., Deputies Malanaphy and Thompson saw defendant's vehicle traveling eastbound on Southeast Division Street in Portland and noticed that the left taillight was not working. They turned on the overhead lights. Despite the fact that he could have stopped his car safely on Division Street, defendant changed lanes and continued to travel several blocks, then turned left and drove another two blocks, coming to a stop in a dimly lit corner of an abandoned lot. Almost immediately after stopping, defendant got out of his car and walked toward the patrol car with documents in his hand. Malanaphy told defendant to stop where he was and took the documents from him. He then told defendant to wait in his car and returned to the patrol car to check the license and identification.

Thompson, who had been waiting nearby, saw defendant getting into his car in an "unusual manner," head first, and thought that he could hear a police scanner in operation in the car. Defendant appeared to be reaching for something toward the center of the car. Thompson shined his flashlight on defendant while he was in his car and, while doing so, saw the barrel of a gun protruding from under a black jacket, a set of brass knuckles on the seat and a police scanner. Thompson drew his gun and ordered defendant to "hold it" and to get out of the car. After placing defendant in the rear of the patrol car, he went to defendant's car and lifted the jacket. He saw a .22 rifle with a retracted stock, which turned out to be loaded. He then saw, wedged between the driver's seat and the console, a .45 caliber semiautomatic pistol, which he later found to be loaded. In the back seat, he saw an open gray zippered bag, in which he could see another .45 pistol. It had a full magazine and a shell in its chamber. In the open bag was a smaller closed bag, which Thompson opened; he found ammunition in it. The evidence found in the closed bag was suppressed.

■     Defendant contends, relying on *State v. Campbell,* 306 Or 157, 759 P2d 1040 (1988), that the use of the flashlight was a technically enhanced search that went beyond the reason for the traffic stop and that evidence discovered as a result must be suppressed. The state contends that the use of the flashlight was not a search or that, even if it was, it was justified for the safety of the officer. *State v. Bates,* 304 Or 519, 524, 747 P2d 991 (1987).

■     The use of the flashlight to keep track of what defendant was doing was not a search. It was a legitimate means of keeping defendant under observation and watching his movements. When, in the process of doing that, Thompson saw, in plain view, the barrel of a gun sticking out from under a jacket, he had probable cause to believe that defendant was carrying a concealed weapon in his car, in violation of ORS 166.250.[1] At that point, he had the right to arrest defendant. Incident to that arrest, he was authorized to move the jacket and to seize the firearm, which turned out to be a .22 caliber rifle.

■ ■     Defendant contends that when the officer observed that the firearm was a rifle and not one with a barrel less than 12 inches long, Thompson should have stopped his search and released defendant. *Former* ORS 166.210 defines "firearms capable of being concealed upon the person" to "include all firearms having a barrel less than 12 inches in length." We held in *State v. Miller,* 87 Or App 439, 440, 742 P2d 692, *appeal dismissed* 304 Or 681 (1987), the legislature did not intend firearms with barrels less than 12 inches in length to be an exhaustive classification of arms capable of concealment. Whether a firearm with a barrel 12 inches or longer is capable of being concealed "depends on the circumstances of the particular case." 87 Or App at 442. The trial court found that the rifle, with the retracted stock, was capable of being concealed

---

[1] ORS 166.250 provides:

"A person commits the crime of unlawful possession of a firearm if the person knowingly:

"* * * * *

"(c) Carries concealed and readily accessible about the person within any vehicle which is under the person's control or direction any firearm capable of being concealed upon the person, without having a license to carry such firearm as provided in ORS 166.290."

upon the person. Defendant does not challenge that finding, and there is evidence to support it.

■        Even assuming that the rifle was not concealable, when Thompson moved the jacket to expose the firearm whose barrel protruded from under it, he saw in plain view a .45 caliber pistol that had been covered by the jacket. That was clearly a violation of the statute. Also in plain view was the .45 caliber pistol in the open gray bag on the rear seat. The trial court did not err in denying defendant's motion to suppress.

Affirmed.